UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

XINJIANG VANDUN ENERGY, CO., LTD.
     Plaintiff,

                                        CASE NO.

v.

YUNFENG XU, QINGHE LIU, and LAW OFFICES
OF LIU & ASSOCIATES, P.A.,
     Defendants.

_____/

## COMPLAINT

**COMES NOW**, Plaintiff, XINJIANG VANDUN ENERGY, CO., LTD., by and through undersigned counsel, and sues Defendants, YUNFENG XU, QINGHE LIU, and LAW OFFICES OF LIU & ASSOCIATES, P.A., and alleges as follows:

1. This is an action for damages of more than $75,000, exclusive of attorneys' fees and costs, and the Court has jurisdiction pursuant to 28 U.S.C. § 1332(a).

2. At all times material hereto, Plaintiff has been a foreign corporation with its principal place of business in Xinjiang, China.

3. At all times material hereto, Defendant, LAW OFFICES OF LIU & ASSOCIATES, P.A., ("the Liu Firm") has been a for-profit corporation with its principal place of business in Orange County, Florida.

4. At all times material hereto, Defendant, YUNFENG XU ("Xu"), has been an individual residing and transacting business in Orange County, Florida.

5. At all times material hereto, Defendant, Qinghe (Jenny) Liu, Esq. ("Attorney Liu"), has been an individual residing and transacting business in Orange County, Florida.

6. Prior to the events leading to this action, Xu owned 100% of Early Education Development, LLC, ("the Company") which has its principal place of business in Orange County, Florida.

7. On or about August 25, 2019, Plaintiff met with the Liu Firm for the purpose of inquiring about the requirements that must be met for an L1A visa application.

8. Plaintiff's interactions with the Liu Firm were conducted primarily through Attorney Liu who is the founder and partner at the Liu Firm and is an agent/representative thereof.

9. Attorney Liu and the Liu Firm advised Plaintiff that purchasing a majority interest in a business was the best way to obtain an L1A visa.

10. On or about August 29th, Plaintiff communicated with Attorney Liu about setting up another in person appointment.

11. The next day, Attorney Liu arranged for Plaintiff to tour Early Education Development, LLC, and meet with Xu to potentially purchase the Company.

12. Attorney Liu and the Liu Firm advised Plaintiff that purchasing a majority interest in the Company was the best way to acquire an L1A visa and that there were no other business purchase opportunities to discuss.

13. Attorney Liu and the Liu Firm told Plaintiff that the Company was profitable and would yield a return on investment of at least $10,000 per month and that the investment was also a means to achieve the desired immigration visa.

14. Plaintiff relied on Attorney Liu's and the Liu Firm's representations regarding the Company and the visa related matters because Plaintiff believed Attorney Liu and the Liu Firm were representing Plaintiff. As it turns out, Attorney Liu and the Liu Firm had a

preexisting relationship with Xu whereby Xu owed a 10% commission to the Liu Firm upon the sale of the Company's shares.

15. On or about September 5, 2019, Plaintiff met with Attorney Liu at the Liu Firm's office where Attorney Liu and the Liu firm again impressed upon Plaintiff that the Company was the only business it could see or consider purchasing.

16. On or about September 9, 2019, Plaintiff and the Liu Firm memorialized the attorney-client relationship by signing a retainer agreement whereby Plaintiff agreed to pay the Liu Firm $5,000 for services needed to complete the purchase of the Company. (*Attached as Exhibit A in the Retainer Agreement*)

17. On September 11, 2019, Plaintiff and Xu executed a contract for Plaintiff to purchase 51% of the Company's shares from Xu in exchange for $680,000. (*Attached as Exhibit B is the contract*). The contract included a clause which allowed Plaintiff to cancel the contract and receive a full refund of the purchase price if the financial statements proved inaccurate. Additionally, the contract contained an addendum which also allowed Plaintiff to cancel the contract and receive a full refund of the purchase price if the documents did not meet the requirements of the L1 visa application.

18. Attorney Liu prepared the contract, purportedly, within the scope of representing Plaintiff.

19. Sometime thereafter, Plaintiff wired $680,000 to the Liu Firm to hold in escrow for payment to Xu.

20. At the same time, Attorney Liu advised Plaintiff that an accountant ("CPA") could be hired for $3,000 to confirm the profitability of the Company. Plaintiff wired the money and the Liu Firm hired the CPA on Plaintiff's behalf.

21. Upon receipt of the CPA's report, Plaintiff realized that Defendants had misrepresented the Company's financial status.

22. Contrary to Defendants' representations, the Company's financials reflected a loss of $65,905 for 2018; and, as of July 2019, the Company's year-to-date financials showed a loss of $7,827.

23. Additionally, Plaintiff was required to sign a document indicating that Plaintiff would not have daily involvement in the operation of the Company. (*Attached as Exhibit C is the Agreement*)

24. Plaintiff's lack of daily involvement in the Company's operations ran contrary to the requirements for applying for an L1A visa.

25. As a result of the foregoing, on or about November 11, 2019, Plaintiff contacted Xu to cancel the sale because the Company was not profitable, as previously represented.

26. It also became unclear to Plaintiff that purchasing the Company shares would be beneficial in the application for an L1A visa since Plaintiff would not be involved in the Company's daily operations.

27. Xu responded that cancelling the sale would not be a problem and agreed to release the money in escrow back to Plaintiff upon Plaintiff signing an agreement releasing the Liu Firm.

28. On or about December 3, 2019, Xu again communicated that she was willing to sign the necessary documents to cancel the sale and return the money to Plaintiff.

29. The next day, the Liu Firm presented a separation agreement to Plaintiff which Plaintiff executed. When the agreement was presented to Xu, all communications ceased.

30. Finally, on or about December 17, 2019, Xu indicated she needed time to discuss the cancellation with her advisors.

31. Meanwhile, $680,000 of Plaintiff's money was sitting in an escrow account which was inaccessible to Plaintiff.

32. After some time, Xu demanded that Plaintiff pay 10% of the sales price in order to cancel the contract; a request that was unsupported by the contract between the parties yet conveniently the same amount Xu was obligated to pay the Liu Firm.

33. Plaintiff has been required to obtain the services of competent counsel to represent it in the above styled case and is entitled to recover its attorneys' fees and costs.

## COUNT I
## BREACH OF CONTRACT
### (Against Xu)

34. Plaintiff hereby realleges paragraphs 1 through 33 as set forth above.

35. Xu represented to Plaintiff that the Company was profitable.

36. Plaintiff entered into a contract with Xu for the sale of 51% of the Company's shares in exchange for $680,000.

37. The contract stated that if the Company's financial statements were not true and accurate, then Plaintiff would be entitled to a full refund.

38. Plaintiff performed its obligation by tendering the total purchase price to the Liu Firm to hold in escrow.

39. However, Xu breached the contract by failing to provide financial statements that accurately reflected the alleged profitable status of the Company and by failing to cancel the contract pursuant to its terms.

40. Plaintiff was damaged and continues to be damaged by Xu's breach of her contractual obligations.

**WHEREFORE**, Plaintiff demands judgment against Xu for damages, together with interest and costs of suit, and any further relief that this Court deems just and proper.

**COUNT II**
**DECLARATORY JUDGMENT**
**(Against the Liu Firm)**

41. Plaintiff hereby realleges paragraphs 1 through 33 as set forth above.

42. This is an action for Declaratory Relief against the Liu Firm to determine that the Liu Firm must return the $680,000 held in escrow to Plaintiff.

43. There is a bona fide, actual, present, and practical need for a declaration of Plaintiff's right to have the Liu Firm return the funds held in escrow.

44. Plaintiff seeks a declaration based on the facts ascertainable in the present controversy.

45. The antagonistic and adverse interests of the parties to this dispute are all before the Court by proper process.

46. The relief sought is not merely the giving of legal advice or the answer to questions propounded from curiosity, but for the immediate need to resolve a controversy between the parties.

**WHEREFORE**, Plaintiff demands that this Court enter a declaratory judgment determining that the Liu Firm must return the funds held in escrow to Plaintiff and order any other additional relief as this Court shall deem just and proper.

**COUNT III**
**VIOLATION OF FLORIDA'S UNFAIR AND**
**DECEPTIVE TRADE PRACTICES ACT**
**(Against Xu)**

47. Plaintiff hereby realleges paragraphs 1 through 33 as set forth above.

6

48. At all times material hereto, Xu has been a person engaging in "trade or commerce" within the meaning of Florida Statute § 501.203(8).

49. At all times material hereto, Plaintiff has been an "interested party" and "consumer" within the meaning of Florida Statute § 501.203(6)-(7).

50. At all times material hereto, the Company shares sold to Plaintiff were "things of value" within the meaning of Florida Statute § 501.203(9).

51. Xu violated Florida's Deceptive and Unfair Trade Practices Act within the meaning of Florida Statute § 501.203(3).

52. Xu engaged in unfair and deceptive trade practices in violation of Florida Statute § 501.204(1) when make misleading representations to Plaintiff that the Company was profitable and when requesting 10% of the sale price to cancel the contract.

53. Xu's misrepresentation of the Company's profitable financial status and failure to release the money in escrow without a 10% payment caused Plaintiff substantial injury.

54. Plaintiff could not reasonably avoid the injury as it justifiably relied on an attorney to guide it through the transaction.

55. Xu's practice of misrepresenting the Company's financial status and demanding 10% of the sales price to cancel the contract fails to provide any countervailing benefits to consumers or to market competition.

56. Plaintiff's interpretation of Xu's representations was reasonable under the circumstances.

57. Xu's false and deceptive representations were material and caused damage to Plaintiff.

**WHEREFORE**, Plaintiff demands judgment against Xu for damages, together with interest, costs of suit, attorneys' fees pursuant to Florida Statute § 501.2105, and any further relief that this Court deems just and proper.

## COUNT IV
## VIOLATION OF FLORIDA'S SECURITIES AND
## INVESTOR PROTECTION ACT
### (Against Xu)

58. Plaintiff hereby realleges paragraphs 1 through 33 as set forth above.

59. At all times material hereto, the Company shares sold to Plaintiff were "securities" within the meaning of Florida Statute § 517.021(22).

60. Xu violated Florida's Securities and Investor Protection Act within the meaning of Florida Statute § 517.301(1).

61. In connection with the sale of the Company's shares, Xu employed a device, scheme, or artifice to defraud Plaintiff of its money.

62. In connection with the sale of the Company's shares, Xu obtained money from Plaintiff by means of untrue statements of material fact regarding the Company's profitability.

63. In connection with the sale of the Company's shares, Xu engaged in a transaction, practice, or course of business which operated as a fraud or deceit upon Plaintiff.

64. Xu's misleading representations were material and caused damage to Plaintiff.

**WHEREFORE**, Plaintiff demands judgment against Xu for damages, together with interest, costs of suit, attorneys' fees pursuant to Florida Statute § 517.211(6), and any further relief that this Court deems just and proper.

## COUNT V
## FRAUD
### (Against Xu)

65. Plaintiff hereby realleges paragraphs 1 through 33 as set forth above.

66. Xu intentionally misrepresented a material fact to Plaintiff by representing that the Company was profitable when Xu knew that it was not.

67. Xu intended for Plaintiff to rely on her misrepresentations in order to induce Plaintiff to buy shares of the Company.

68. Plaintiff justifiably relied on Xu's misrepresentations since the contract allowed Plaintiff to cancel the sale if the Company's financials had not been accurately represented by Xu.

69. As a result of the fraud perpetrated by Xu, Plaintiff suffered damages.

**WHEREFORE**, Plaintiff demands judgment against Xu for damages, together with interest, costs of suit, attorney's fees, and any further relief that this Court deems just and proper.

## COUNT VI
## FRAUD
### (Against the Liu Firm and Attorney)

70. Plaintiff hereby realleges paragraphs 1 through 33 as set forth above.

71. Attorney Liu and the Liu Firm intentionally misrepresented a material fact to Plaintiff by representing that the Company was profitable when Attorney Liu and the Liu Firm knew that it was not.

72. Furthermore, Attorney Liu and the Liu Firm repeatedly misrepresented to Plaintiff that there were no other opportunities for purchasing or investing in a business that would allow Plaintiff to apply for an L1A visa.

73. Attorney Liu and the Liu Firm intended for Plaintiff to rely on their misrepresentations in order to induce Plaintiff to buy shares of the Company.

74. Plaintiff justifiably relied on Attorney Liu's and the Liu Firm's misrepresentations because Plaintiff believed Attorney Liu and the Liu Firm were representing Plaintiff and acting in a fiduciary capacity as Plaintiff's attorney.

75. As a result of the fraud perpetrated by Attorney Liu and the Liu Firm, Plaintiff suffered damages.

WHEREFORE, Plaintiff demands judgment against Attorney Liu and the Liu Firm for damages, together with interest, costs of suit, attorney's fees, and any further relief that this Court deems just and proper.

**COUNT VII**
**NEGLIGENT MISREPRESENTATION**
**(Against Xu)**

76. Plaintiff hereby realleges paragraphs 1 through 33 as set forth above.

77. Xu negligently misrepresented a material fact to Plaintiff by representing that the Company was profitable

78. Xu was negligent in making these statements because she either made the misrepresentation without knowledge as to its truth or falsity or made the misrepresentation under circumstances in which she should have known of its falsity.

79. Xu intended for her statements to induce Plaintiff to act and purchase the Company's shares.

80. Plaintiff justifiably relied on Xu's misrepresentations after repeated communications with Xu regarding the sale.

81. Xu's negligent misrepresentations caused Plaintiff loss, injury, and damage since Plaintiff had been deprived of $680,000.

WHEREFORE, Plaintiff demands judgment against Xu for damages, together with interest, costs of suit, attorneys' fees, and any further relief that this Court deems just and proper.

**COUNT VIII**
**NEGLIGENT MISREPRESENTATION**
**(Against Attorney Liu and the Liu Firm)**

82. Plaintiff hereby realleges paragraphs 1 through 33 as set forth above.

83. Attorney Liu and the Liu Firm negligently misrepresented a material fact to Plaintiff by representing that the Company was profitable

84. Additionally, Attorney Liu and the Liu Firm negligently misrepresented a material fact to Plaintiff by telling Plaintiff that there were no other opportunities for purchasing or investing in a business that would allow Plaintiff to apply for an L1A visa.

85. Attorney Liu and the Liu Firm were negligent in making these statements because they either made the misrepresentation without knowledge as to its truth or falsity or made the misrepresentation under circumstances in which they ought to have known of its falsity.

86. Attorney Liu and the Liu Firm intended for its statement to induce Plaintiff to act and purchase the Company's shares.

87. Plaintiff justifiably relied on the Attorney Liu's and the Liu Firm's misrepresentation because Plaintiff believed they were representing Plaintiff and acting in a fiduciary capacity as Plaintiff's attorney.

88. Attorney Liu's and the Liu Firm's negligent misrepresentations caused Plaintiff loss, injury, and damage since Plaintiff had been deprived of $680,000.

**WHEREFORE**, Plaintiff demands judgment against Attorney Liu and the Liu Firm for damages, together with interest, costs of suit, attorneys' fees, and any further relief that this Court deems just and proper.

### COUNT IX
### CONSPIRACY
### (Against Attorney Liu, the Liu Firm, and Xu)

89. Plaintiff hereby realleges paragraphs 1 through 36 and 66 through 75 as set forth above.

90. Defendants formed an agreement to commit fraud upon Plaintiff by fraudulently misrepresenting the financial status of the Company to Plaintiff and agreeing that

Attorney Liu and the Liu Firm would provide advice that the Company was the best option for Plaintiff to obtain an L1A visa.

91. Attorney Liu and the Liu Firm introduced Plaintiff to Xu and informed Plaintiff of the Company.

92. Attorney Liu and the Liu Firm repeatedly advised Plaintiff that purchasing a majority interest in the Company was the best way to secure an L1A visa and no other businesses were worth considering.

93. Attorney Liu and the Liu Firm also prepared the contract for Plaintiff to sign and collected a legal fee for those services from Plaintiff.

94. Unbeknownst to Plaintiff, Xu has previously agreed to pay the Liu Firm a 10% commission on the sale of the Company's shares.

95. Defendants misrepresented the Company's financial status to Plaintiff and induced Plaintiff to sign a contract for sale of the Company's shares.

96. When Plaintiff attempted to cancel the contract due to Defendants' misrepresentations, Xu refused to release the money in escrow without a 10% fee. On information and belief, this act by Xu was encourage by Attorney Liu and the Liu Firm.

97. As a result of Defendants' actions committed in furtherance of the conspiracy, Plaintiff suffered damage.

**WHEREFORE**, Plaintiff demands judgment against Defendants for damages, together with interest, costs of suit, and any further relief that this Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

**WHEREFORE,** Plaintiffs demands a trial by jury of all issues triable as of right.

Respectfully submitted this 3rd day of March, 2020.

/s/ John M. Wicker
**JOHN M. WICKER, ESQUIRE**
Florida Bar Number:  28637
Costello & Wicker, P.A.
12670 New Brittany Blvd, Suite 101
Fort Myers, Florida 33907
Telephone: (239) 939-2222
Facsimile: (239) 939-2280
jwicker@lawcrw.com
*Attorneys for Plaintiff*

# EXHIBIT

# "A"



# Law Office of Liu & Associates, P.A.

## 刘庆贺律师事务所

5052 West Colonial Dr., Orlando, FL 32808
Tel: (407)930-8082  Fax: (407)930-8082

## RETAINER AGREEMENT

CLIENT: 新疆万盾能源科技有限责任公司
　　　　卿召强

RE: 1. Stock Purchase Agreement; Closing; Operation Agreement; Stock Certificate;
　　　股权买卖协议；交易交接；公司运营合同；股权凭证
　　2. Review US company documents
　　　检查美国被收购公司资料符合L1公司主题资格

Dear Client:

　　Thank you for retaining Law Offices of Liu & Associates, P.A. ("Law Firm") for the above referenced matter. The office of Liu & Associates, P.A. will be proud to represent you in this matter. The Law Firm shall assist you as follows:

- The attorney fee for the legal services described above is $5,000.00.

　　The Law Firm shall provide services using their best efforts and the full exertion of professional skills. *However, no representations have been made to Client concerning the probability of success in any matter the Law Firms performs for the Client.*

### Attorney fees

　　Client and Law Firm agree to the following payment plan. **There shall be no refund of legal fees paid to Law Firm.** Failure to timely pay for services rendered upon billing for same shall be grounds for terminations of legal services by Law Firm.

1. $3,000.00　　　　**Stock Purchase Agreement; Closing; Operation Agreement; Stock Certificate** 股权买卖协议；交易交接；公司运营合同；股权凭证
2. $2,000.00　　　　Review US company documents 检查美国被收购公司资料符合L1公司主题资格

- **Client is responsible for all Court Costs and Fees. All Court Costs and Fees shall be due before filing of any court documents or papers.**

### Client Agrees

- To fully and truthfully disclose all information of relevance to this matter
- To immediately notify Law Firm in writing of all changes of address, telephone numbers, employment and other circumstances relating to this matter.
- To promptly notify Law Firm upon receipt of any court document or other notice.



- To promptly execute or obtain all documents and information Law Firm requests.
- To submit U.S. tax papers, federal and state, and other financial documents to Law Firm if requested.
- If the Law Firms deems it necessary to depose any witness and the Client consents thereto, the Client agrees to pay, in advance, all travel costs and expenses and deposition costs.
- If the Law Firm deems it necessary to hire an expert witness, property appraiser, or other and the Client consents thereto, the Client agrees to pay all costs in advance.
- To pay any payment when is due.

Questions About Billing

You are encouraged to discuss any questions you have about statements rendered to you with the Law Firm's Accounting Department or a member of the Law Firm familiar with your account.

Please indicate your agreement with the terms specified or set out above by signing this agreement and returning it, along with initial payment of $5,000.00 (initial retainer payment) made payable to Law Offices of Liu & Associates. A copy of this agreement is included for your records.

Once again, thank you for referring this matter to us. We shall endeavor to remain prompt and accessible, and we will, of course, apprise you of all developments in this matter. If you ever have any questions or comments, do not hesitate to contact me.

Sincerely,

Qinghe Liu, Esq.
Mark McMallin, Esq.
Attorney at Law

ACCEPTED AND AGREED TO this day of September 9, 2019

Signature: _____

Printed Name: Qing, Zhaoqiang

Title:

Address: 4817 Cypress Woods Dr, Apt 5308

Phone: 678-328-0618 (太太)

Email: r598347845@yahoo.com.

2of 2

# EXHIBIT

# "B"

# THE INTENT OF THIS MEMBERSHIP SHARE SALES AND PURCHASE AGREEMENT

THIS MEMBERSHIP SHARE SALES AND PURCHASE AGREEMENT (this "Agreement") is dated as of

September 11, 2019, and is made and entered into by and among Yunfeng Xu whose mailing address is 17835 Terra Vista Court, Winter Garden, Florida 34787 ("Seller") and Xinjiang Vandun Energy, Co. Ltd., whose mailing address is 8 Yongheng Road, Karamay District, Karamay, Xinjiang, China ("Buyer") with respect to the following facts:

A.    Seller owns 100% of all membership shares of EARLY EDUCATION DEVELOPMENT, LLC., whose mailing address is 17835 Terra Vista Court, Winter Garden, Florida 34787 (the "Company").

B.    Seller desires to sell to Buyer, and Buyer desires to purchase from Seller, fifty-one (51%) percent of Seller's Membership Shares upon the terms and conditions set forth in this Agreement.

Accordingly, for and in consideration of the premises, the mutual promises, covenants and agreements hereafter set forth, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Seller and Buyer, intending to be legally bound, do hereby agree as follows:

## ARTICLE I
## SALE AND PURCHASE

Section 1.1

**Sale and Purchase of Membership Shares.**   On and subject to the terms and conditions of this Agreement, effective as of the Closing Date, Buyer shall purchase from Seller, and Seller shall sell to Buyer, fifty-one (51%) percent of Seller's Membership Shares (the "Shares") of the Company for the consideration specified in Section 1.2 and upon the terms and conditions set forth in this Agreement.

Upon execution of this Purchase Agreement Buyer will own 51% of all Membership Shares of the Company.

**Purchase Price.**  The purchase price for the Membership Shares (the "Purchase Price") is *Six Hundred Eighty Thousand Dollars ($680,000.00)*. The Purchase Price shall be paid to the Seller as follows:

1) The Buyer shall deposit into the Trust Account of the Law Offices of Liu & Associates P A, *Six Hundred Eighty Thousand Dollars ($680,000.00)* by check or wire transfer at the signing of this Agreement to be held until the closing.
2) Closing shall take place within five (5) days of the signing of this Agreement.
3) If Franchise Agreement transfer becomes necessary after the signing of this Agreement; Seller shall execute all required documents to insure the transfer of the Franchise Agreement to the Buyer. If Franchise Agreement transfer is not required, Early Education Development, LLC., shall be entitled to exclusive use of Franchise Agreement.
4) Closing can be extended to accommodate Franchise Agreement transfer if required.
5) If Franchise Agreement is not transferable either party may cancel this agreement and buyer shall be entitled to a full refund. Seller shall not pay liquidated damages ($68,000.00) if Franchise Agreement is not transferable.
6) Within two (2) days of the signing of this Agreement Seller shall provide to buyer any requested documents.

# THE INTENT OF THIS MEMBERSHIP SHARE SALES AND PURCHASE AGREEMENT

7) Should the Company's Financial Statements prove not to be true and accurate the Buyer shall be entitled to a full refund of the Purchase Price.

8) If Seller refuses to close for any reason after the signing of this Agreement the Buyer shall be entitled to Ten (10%) percent ($68,000.00) of the Purchase Price as Liquidated damages.

9) At Closing the Law Offices of Liu & Associates shall remit to Seller the Purchase Price minus a .1% ($680.00) administrative fee.

10) Total amount due to Seller at closing $679,320.00.

### Section 1.3

**Closing Date; Deliveries.** The closing shall occur on such date as the parties hereto may agree to (the "Closing Date"). On the Closing Date, Buyer shall deliver a check in the amount of the Purchase Price to Seller, and Seller shall deliver to Buyer a share certificate representing the Shares issued in the name of the Buyer.

## ARTICLE II
## REPRESENTATIONS, WARRANTIES AND COVENANTS OF SELLER

To induce Buyer to enter into and perform its obligations under this Agreement, Seller hereby represents and warrants to Buyer, and covenants with Buyer, as follows:

### Section 2.1

**Authority and Capacity.** Seller has all requisite power, authority and capacity to enter into this Agreement. The execution, delivery and performance of this Agreement by Seller does not, and the consummation of the transaction contemplated hereby will not, result in a breach of or default under any agreement to which Seller is a party or by which Seller is bound.

### Section 2.2

**Binding Agreement.** This Agreement has been duly and validly executed and delivered by Seller and constitutes Seller's valid and binding agreement, enforceable against Seller in accordance with and subject to its terms.

### Section 2.3

**Title to Shares.** Seller is the lawful, record and beneficial owner of all of the Shares, free and clear of any liens, claims, agreements, charges, security interests and encumbrances whatsoever. The sale, conveyance, assignment, and transfer of the Shares in accordance with the terms of this Agreement transfers to Buyer legal and valid title to the Shares, free and clear of all liens, security interests, hypothecations or pledges.

## ARTICLE III
## REPRESENTATIONS AND WARRANTIES OF BUYER

To induce Seller to enter into and perform their obligations under this Agreement, Buyer represents and warrants to Seller as follows:

### Section 3.1

**Authority and Capacity.** Buyer has all requisite power, authority and capacity to enter into this Agreement. The execution, delivery and performance of this Agreement by Buyer does not, and the consummation of the transaction contemplated hereby will not, result in a breach of or default under any agreement to which Buyer is a party or by which Buyer is bound.

### Section 3.2

THE INTENT OF THIS MEMBERSHIP SHARE SALES
AND PURCHASE AGREEMENT

Disclosure.  Buyer is aware of the Company's business and financial condition.

ARTICLE IV
MISCELLANEOUS

Section 4.1
Entire Agreement.  This Agreement constitutes the entire understanding and agreement of the parties relating to the subject matter hereof and supersedes any and all prior understandings, agreements, negotiations and discussions, both written and oral, between the parties hereto with respect to the subject matter hereof.

Section 4.2
Governing Law.  This Agreement shall be construed, interpreted and enforced in accordance with, and shall be governed by, the laws of the State of Florida without reference to, and regardless of, any applicable choice or conflicts of laws principles.

Section 4.3
Counterparts.  This Agreement may be executed in any number of counterparts and by the several parties hereto in separate counterparts, each of which shall be deemed to be an original, and all of which together shall constitute one and the same Agreement.

Section 4.4
Further Assurances.  Each of the parties hereto shall from time to time at the request of any other party hereto, and without further consideration, execute and deliver to such other party such further instruments of assignment, transfer, conveyance and confirmation and take such other action as such other party may reasonably request in order to more effectively fulfill the purposes of this Agreement.

IN WITNESS WHEREOF, this Agreement has been signed by the parties hereto as of the date first above written.

_Zhaoqiang Qing_

Buyer:
For Xinjiang Vandun Energy, Co., Ltd.

_Yunfeng Xu_

Seller: Yunfeng Xu

Acknowledged and subscribed before me by  ZHAOQIANG Qing _____  and Yunfeng Xu both of whom have produced

FL DL # Q520 -980-72-162-0 _____  as identification

FL DL # X000 -960-69-798-0 _____  as identification.

on September 11, 2019
STATE OF FLORIDA
COUNTY OF ORANGE

3 of 4

THE INTENT OF THIS MEMBERSHIP SHARE SALES
AND PURCHASE AGREEMENT



---
FL Notary Public – Signature

Lee Ding

---
FL Notary Public – Printed Name


Notary Public State of Florida
Lee Ding
My Commission GG 343503
Expires 06/22/2023

Addendum

If the documents are not meet the requirement of the L1 visa application, buyer entitled to fully refund of the purchase price.

*Zhao Qiang Qing*

Buyer:
For Xinjiang Vandun Energy, Co., Ltd.

*Yunfeng Xu*

Seller: Yunfeng Xu

Acknowledged and subscribed before me by *ZHAo Qiang Qing* and Yunfeng Xu both of whom have produced

FLDL# Q 520-880-72-162-0 _____ as identification

FL DL# X000-960-69-798-0 _____ as identification.

on September 11,2019

STATE OF FLORIDA
COUNTY OF ORANGE

*Lee Ding*

FL. Notary Public - Signature

Lee Ding

FL Notary Public – Printed Name



Notary Public State of Florida
Lee Ding
My Commission GG 343503
Expires 08/22/2023

# EXHIBIT

# "C"

甲乙　　　某某双方合作运营协议

某某双方托经营权．乙方负责运营．甲方不干预
（甲方具有监督管理权．）（开始将讨论同意此决策）

日常经营管理，重要决策由双方同意。

在不违反法律承加益商讨争创前提下双方有权自主
处理事务 以及股权转让出自之权．股权转让需提前
（同等条件下双方有优先购买权．）

三个月告之经双方同意重新设立股董权宜．

合作募资及起赢金债务以双方股份为依据．合作之前债权
债务由原股东自责．甲方债权债务关系与此项目无关．

未经双方同意禁止合作其它项目。

除日常正常支出外．（如员工工资、学校基本用工等）外．
其它单项支出超过二○○○美元，须经双方告同同意．

甲：万盾能源科技有限公司　　　　　Zhao Qiang Qing

乙：Xu, Yunfeng

Yunfeng Xu